# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01520-COA

IN RE: THE ESTATE OF NORAIR AVAKIAN,                    APPELLANT
DECEASED: BURNETTE AVAKIAN,
EXECUTRIX

v.

WILMINGTON TRUST NATIONAL                              APPELLEES
ASSOCIATION, AS SUCCESSOR TRUSTEE TO
CITIBANK, N.A., AS TRUSTEE FOR BEAR
STEARNS ASSET BACKED SECURITIES
TRUST 2007-2, ASSET-BACKED
CERTIFICATES, SERIES 2007-2 AND JP
MORGAN CHASE BANK, N.A.

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/2015 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN CRAIG PANTER |
| | DAVID L. SANDERS |
| ATTORNEYS FOR APPELLEES: | WILLIAM JACOB LONG IV |
| | EDDIE TRAVIS RAMEY |
| | CHRISTOPHER DANIEL MEYER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | CREDITOR'S STATEMENT OF CLAIM WAS FOUND NOT TIME-BARRED |
| DISPOSITION: | AFFIRMED - 04/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

CARLTON, J., FOR THE COURT:

¶1.    Norair Avakian died July 19, 2010.  On July 28, 2010, the Lowndes County Chancery Court entered an order probating Norair's last will and testament and issued letters testamentary to his widow, Burnette Avakian, to serve as executrix of Norair's estate

("Estate"). Three separate lawsuits were filed as a result of attempts by creditors to foreclose on Norair's property and seek damages based on the default of a promissory note that Norair executed prior to his death. We will first provide a brief procedural history of the matter in the probate case before us on appeal. We will then provide a more in-depth discussion of the relevant matters involving the three separate actions filed against the Estate and the executrix, Burnette, in the facts section below.

¶2. On October 15, 2014, J.P. Morgan Chase Bank N.A. ("J.P. Morgan") filed a statement of claim against the Estate in the chancery court based upon Norair's debt arising from a promissory note of $815,905.06. J.P. Morgan, as the servicer of the loan resulting from the promissory note, filed the statement of claim on behalf of Citibank N.A. ("Citibank"), the creditor. In the probate action, on January 30, 2015, Burnette, as executrix, filed her contest of J.P. Morgan's statement of claim, asserting that any claim on the promissory note was time-barred by Mississippi Code Annotated section 15-1-25 (Rev. 2012), and that pursuant to Mississippi Code Annotated section 15-1-3 (Rev. 2012), the underlying claim was extinguished. On May 27, 2015, Wilmington Trust National Association ("Wilmington Trust"), which replaced Citibank as the creditor, filed a response to Burnette's contest of the claim in the probate proceeding.

¶3. On June 15, 2015, the chancellor heard oral argument on Burnette's contest of the statement of claim in the probate proceeding. The chancellor stated that "the sole issue before this court is whether or not a creditor's claim as it related to a promissory note is

time[-]barred," and the chancellor ultimately found that although J.P. Morgan filed its statement of claim outside of the ninety-day statutory time period in which to probate a claim against the Estate pursuant to Mississippi Code Annotated section 91-7-151 (Rev. 2013), the claim was still timely filed in the probate action due to Burnette's failure as executrix to provide all reasonably ascertainable creditors with notice of probate of the Estate pursuant to Mississippi Code Annotated section 91-7-145 (Rev. 2013).

¶4.    Burnette now appeals the chancellor's judgment, asserting the following assignments of error:  (1) the chancellor erred in finding that an order from the United States Court of Appeals for the Fifth Circuit prohibiting a lender from foreclosing on property owned by Burnette tolled the running of the statute of limitations on the Creditor's[1] statement of claim regarding the promissory note, and (2) the chancellor erred in finding that Burnette could not rely upon the statute of limitations because she failed to mail written notice to creditors of the opening of the Estate and the need to file a claim, pursuant to section 91-7-145(1).

¶5.    The only issue before us on appeal is whether the claim filed by the Creditor in the probate proceeding was timely filed.  Finding no error in the chancellor's judgment that the Creditor's statement of claim was timely filed in the probate proceeding, we affirm as to that issue.

**FACTS**

---

[1] For the purposes of clarity in this appeal due to the multiple lawsuits and filings, we will refer to EquiFirst Corporation, J.P. Morgan, Citibank, and Wilmington Trust collectively as "Creditor."

¶6. On September 18, 2002, Norair and his wife, Burnette, purchased a house located in Columbus, Mississippi. They executed a deed of trust to secure a loan for the purchase from Southstar Financing LLC. The record reflects that title to the property was vested in both Norair's and Burnette's names as joint tenants.

¶7. On November 2, 2004, Norair executed a deed that conveyed title to the property to Burnette alone to prevent Burnette from bearing any liability for the debt should Norair die. In March 2006, Norair and Burnette then refinanced the mortgage with EquiFirst Corporation ("EquiFirst"). Norair took out a loan in his name only and executed a promissory note in favor of EquiFirst. EquiFirst required both Burnette and Norair to execute a deed of trust. Norair was out of state at the time of closing, so EquiFirst forwarded one set of loan documents to him so he could execute and return the documents. EquiFirst had Burnette execute a second set the following day. This resulted in two deeds of trust on the property – one executed by Norair on March 7, 2006, and one executed by Burnette on March 8, 2006. Each deed of trust was recorded as a separate instrument with the Lowndes County Chancery Clerk.

¶8. Norair's promissory note to EquiFirst was later sold to Citibank in its capacity as trustee of the Bear Sterns Asset Backed Securities Trust 2007-2, Asset-Backed Certificates, Series 2007-2 ("Bear Sterns"). J.P. Morgan became the servicing agent for Citibank. On December 3, 2012, Wilmington Trust replaced Citibank as the trustee for Bear Sterns. We recognize that J.P. Morgan served as the servicer for the loan, and EquiFirst, Citibank, and

4

Wilmington Trust were the creditors.

¶9.     Norair fell in default on the loan and died shortly thereafter on July 19, 2010.  On July 28, 2010, Burnette filed a petition for probate of Norair's last will and testament.  That same day, the chancery court entered an order probating the last will and testament and issued letters testamentary to Burnette to serve as executrix of the Estate.  Burnette failed to identify any entity as a known creditor of the Estate pursuant to section 91-7-145, and she also failed to provide the Creditor herein, or any creditor, notice by mail as required by section 91-7-145 regarding the probate of the Estate.  The record reflects that Burnette did file a "Notice to Creditors Affidavit" stating that she had and would notify known creditors, without listing any specific creditors.

¶10.     The Creditor made its first attempt at foreclosure on the home as early as December 2010 but never completed the process.  In early 2012, the Creditor again provided Burnette notice that it intended to foreclose on the house.  The Creditor set the foreclosure sale for May 10, 2012.

¶11.     On May 9, 2012, the day before the scheduled foreclosure sale, Burnette filed suit in the chancery court against the Creditor seeking to enjoin the foreclosure by contending that the two deeds of trust on the home were both void pursuant to Mississippi Code Annotated section 89-1-29 (Rev. 2011) because neither deed contained the signatures of both Burnette and Norair.  The lawsuit was removed to the United States District Court for the Northern District of Mississippi.

5

¶12.   Following a trial, the district court entered a final judgment on February 10, 2014, in favor of Burnette and held that the deeds of trust on the house were unenforceable. The Creditor appealed the decision to the Fifth Circuit. During the appeal, the Fifth Circuit issued a stay on May 12, 2014, that prohibited foreclosure of the property during the pendency of the appeal.

¶13.   On October 14, 2014, after receiving the ruling from the district court, the Creditor[2] filed a statement of claim in the probate proceeding pending in chancery court based upon Norair's debt arising from the promissory note of $815,905.06. The statement of claim set forth that "[t]he claim was presumed secured pursuant to a mortgage loan; however, the claim has been deemed unsecured via [the district court's judgment]."

¶14.   On December 9, 2014, the Fifth Circuit reversed the district court after finding that the Mississippi Supreme Court would likely construe the two deeds of trust as together creating a valid deed of trust and remanded the case for further proceedings. The Creditor then filed a motion for entry of final judgment in the district court.[3]

---

[2] The record reflects that J.P. Morgan, as the servicer for Citibank, filed the statement of claim.

[3] During the course of the federal action, Wilmington Trust succeeded Citibank as the lienholder and creditor on the promissory note. In response to the motion for entry of final judgment, Burnette filed a motion to dismiss the action, arguing that it became moot on December 3, 2012, when Wilmington Trust succeeded Citibank as trustee for the lienholder. Citibank responded by filing a motion to substitute. On August 4, 2015, the district court entered a final judgment in favor of Wilmington Trust and denied Burnette's motion to dismiss. The district court found that Burnette waived her homestead-exemption right, and Wilmington Trust, as trustee for the lienholder, could foreclose on the deed of trust.

6

¶15. In the probate action now before us on appeal, the record shows that on January 30, 2015, Burnette filed her contest of J.P. Morgan's statement of claim, asserting that any claim on the promissory note was time-barred by section 15-1-25, and that pursuant to section 15-1-3, the underlying claim was extinguished. The Creditor filed a response to Burnette's contest of claim on May 27, 2015. On June 12, 2015, Burnette filed her Reply of Executrix.

¶16. In the meantime, on February 23, 2015, the Creditor filed a separate suit in the chancery court against both Burnette, individually, and the Estate, seeking to foreclose on the home and to recover damages against the Estate on the promissory note.

¶17. In June 2015, the chancellor heard arguments from the Creditor and Burnette regarding the Creditor's statement of claim. On September 8, 2015, the chancellor issued an opinion and judgment in favor of the Creditor. In his judgment, the chancellor stated that "the sole issue before this court is whether or not a creditor's claim as it related to a promissory note is time[-]barred. The issues of whether or not foreclosure proceedings and/or deeds of trusts are valid were heard in another cause and ultimately, by the federal courts."

¶18. In his judgment, the chancellor examined Burnette's argument that the Creditor's statement of claim is time-barred because the statement was filed outside the ninety-day requirement for filing probate claims set forth in section 91-7-151. The chancellor found that Burnette, as executrix, failed to mail the statutorily required notice to the Creditor, who was unquestionably a reasonably ascertainable creditor at the time the chancery court issued

7

letters testamentary to Burnette. The chancellor explained that "a strict and literal interpretation of . . . [section] 91-7-145(1) mandates that the promissory note holder [(Citibank)] be given notice by mail before the [ninety] days specified in . . . [section] 91-7-151 begins to run." The chancellor determined that since Burnette, as executrix, failed to provide the Creditor with proper notice of its right to file a claim against the Estate, the October 14, 2014 statement of claim filed by the Creditor was therefore timely.

¶19. The chancellor further found that since Burnette received letters testamentary on July 28, 2010, the ninety-day moratorium on suits against an executor, provided by Mississippi Code Annotated section 91-7-239 (Rev. 2013), expired on October 26, 2010. As a result, the chancellor concluded that the four-year statute-of-limitations period provided by section 15-1-25[4] for a creditor to bring an action against an executor began to run on October 26, 2010, and expired on October 26, 2014. The chancellor found that "neither [the Creditor], nor any other party, filed suit against the Estate to enforce the promissory note prior to October 26, 2014." Although the Creditor filed a statement of claim on October 14, 2014, the chancellor explained that "the filing of a claim by a creditor is not sufficient to stop the running of the statute of limitations, even if timely filed"; rather, in order to enforce its claim, the creditor must bring a lawsuit before the four-year statute of limitations expires. The chancellor ruled

---

[4] Section 15-1-25 provides a four-year statute of limitations for any action "against any executor or administrator upon any judgment or other cause of action against his testator or intestate." Section 91-7-239 further conditions that "[a] suit or action shall not be brought against an executor or administrator until after the expiration of ninety (90) days from the date of letters testamentary or of administration."

that the Creditor's statement of claim was therefore time-barred unless: (1) the Creditor's prior 2010 and 2012 foreclosure attempts constituted a lawsuit for purposes of section 15-1-25; or (2) the running of section 15-1-25 is tolled based on the Fifth Circuit's stay on the proceedings.

¶20. The chancellor determined that the foreclosure actions of 2010 and 2012 failed to constitute a lawsuit for the purposes of section 15-1-25. The chancellor found, however, that the Fifth Circuit's May 12, 2014 stay-of-proceedings order that prohibited the Creditor from foreclosing on Burnette's house began the tolling of section 15-1-25 as to the promissory note. The chancellor explained that the tolling period then ended on either one of two dates: at its earliest on December 9, 2014, when the Fifth Circuit reversed the district court or, at the latest, on August 4, 2015, when the district court entered its final judgment. The chancellor held "in either case, [the Creditor] filed its lawsuit against the Estate and [Burnette] on February 23, 2015, less than three months after the Fifth Circuit reversed the trial court, and thereby timely."[5]

¶21. On October 6, 2015, Burnette filed a notice of appeal. She renoticed her appeal two days later.

**STANDARD OF REVIEW**

---

[5] The Creditor's separate February 23, 2015 action is pending below and was not before the chancellor on review. As a result, we recognize the chancellor's finding that the federal stay tolled the running of the statute of limitations under section 15-1-25 until either December 4, 2014, or August 4, 2015. We will not comment on the chancellor's statement that the Creditor's February 23, 2015 lawsuit was timely filed under section 15-1-25.

9

¶22. This Court "will not disturb a chancellor's findings unless they are manifestly wrong, clearly erroneous, or the chancellor applied an erroneous legal standard." *Howard v. Gunnell*, 63 So. 3d 589, 593 (¶8) (Miss. Ct. App. 2011).[6] We apply an abuse-of-discretion standard when reviewing a chancellor's decision. *Id*. (citing *Creely v. Hosemann*, 910 So. 2d 512, 516 (¶11) (Miss. 2005)).

¶23. "The issue of whether the applicable statute of limitations has run is a question of law." *Stringer v. Trapp*, 30 So. 3d 339, 341 (¶9) (Miss. 2010) (citing *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1000 (¶11) (Miss. 2004)). "We utilize a de novo standard of review when reviewing questions of law." *Howard*, 63 So. 3d at 593 (¶8). The Mississippi Supreme Court has explained that "[t]he burden of proving an affirmative defense lies upon the party who relies upon that defense[, and] . . . when a [party] pleads the statute of limitations as a defense and shows that the suit is thereby barred, he has met this burden of proof." *Jenkins v. Pensacola Health Tr. Inc.*, 933 So. 2d 923, 927 (¶14) (Miss. 2006).

¶24. This Court has held that "[a] probated claim must substantially comply with the provisions of . . . [section] 91-7-149." *In re Estate of Lingle*, 822 So. 2d 320, 322 (¶12) (Miss. Ct. App. 2002) (citing *Cent. Optical Merch. Co. v. Lowe's Estate*, 249 Miss. 61, 71, 160 So. 2d 673, 678 (1964)). In *Estate of Lingle*, 822 So. 2d at 322-23 (¶12), we explained that "[t]he written evidence or statement of claim must on its face show a prima facie right to recover from the estate or that liability exists on the part of the estate." This Court further

---

[6] *See also In re Estate of High*, 19 So. 3d 1282, 1285 (¶7) (Miss. Ct. App. 2009).

provided:

> An adequate claim must give notice that it existed against the estate, must distinguish the claim with reasonable certainty from all other similar claims[,] and must give information concerning the nature and amount of the demand so that it would enable the representative of the estate to act intelligently either in providing for its payment or in rejecting it.

*Id*. at 323 (¶12); *see also Thornhill v. Thornhill*, 905 So. 2d 747, 752 (¶¶14-15) (Miss. Ct. App. 2004) (addressing a determination of the timeliness of a probate claim where the claimant was a minor, this Court explained that the question was whether the claimant "could prove any set of evidence that would entitle him to relief against [the estate]").

## DISCUSSION

¶25. The sole issue before us on appeal is whether the Creditor timely filed its statement of claim against the Estate on the promissory note in the probate proceeding.[7] We first turn to examine whether the chancellor erred in finding that the Creditor's October 15, 2014 statement of claim was not barred.

¶26. Section 91-7-151 bars all claims against the estate of a deceased person, whether due or not, that were filed more than ninety days after the first publication of notice to creditors to present their claim. As previously stated, the record reflects that Burnette, as executrix, failed in her statutory duty pursuant to section 91-7-145(1) to provide notice to any creditors

---

[7] *See In re Estate of Philyaw*, 514 So. 2d 1232, 1236 (Miss. 1987) ("[T]he time for an appeal for an administrator or executor unhappy with a decree allowing a contested claim runs from the date of such decree [and not] from the date of the decree finally closing the estate.").

11

regarding the probate of Norair's estate. We acknowledge that jurisprudence and the plain language of section 91-7-145 therefore reflect that the chancellor correctly found that the filing period for probate claims in this case did not expire since Burnette failed to provide the required statutory notice to trigger the running of the filing period. *See* Miss. Code Ann. § 91-7-145(1); *Bankston v. First Nat'l Bank & Tr. Co. of Vicksburg*, 177 Miss. 719, 719, 171 So. 18, 19-20 (1936). In our review of the law as applied to this case, we turn now to the record.

¶27. The record reflects that on July 28, 2010, the chancery court entered an order probating the last will and testament and issued letters testamentary to Burnette to serve as executrix of the Estate. As stated, the Creditor filed no statement of claim until October 15, 2014. In his judgment, the chancellor also acknowledged Burnette's failure to provide the required statutory notice to the Creditor, stating as follows:

> After the U.S. District Court deemed the subject deeds of trust invalid in February 2014, and finding itself with the possibility of an unsecured promissory note, [the Creditor] filed a Statement of Claim in the Estate on October 15, 2014. The Claim was filed outside of the [ninety]-day statutory time period in which to probate a claim against the Estate. *See* Miss. Code Ann. § 91-7-151. Thus, one could argue that the claim was untimely and, therefore, barred.

> However, Wife, as Executrix, is required by . . . [section] 91-7-145(1) to mail notice to "reasonably ascertainable" creditors. [*In re Estate of Petrick*], 635 So. 2d 1389, 1393 (Miss. 1994). A reasonably ascertainable creditor is one who is discoverable through "reasonably diligent efforts." *Id*.

> There is no question that the promissory note holder was a reasonably ascertainable creditor and that Wife did not mail notice pursuant to . . . [section] 91-7-145(1).

12

A strict and literal interpretation of . . . [section] 91-7-145(1) mandates that the promissory note holder be given notice by mail before the [ninety] days specified in . . . [section] 91-7-151 begins to run. *See In re Estate of Ladner*, 911 So. 2d 673, 676 (Miss. [Ct. App.] 2005).

Having failed to do so in this case, this Court finds that the Statement of Claim filed by [the Creditor] was timely.

¶28.    Section 91-7-145(1) provides:

The executor or administrator shall make reasonably diligent efforts to identify persons having claims against the estate. *Such executor or administrator shall mail a notice to persons so identified, at their last known address, informing them that a failure to have their claim probated and registered by the clerk of the court granting letters within ninety (90) days after the first publication of the notice to creditors will bar such claim as provided in [Mississippi Code Annotated s]ection 91-7-151.*

(Emphasis added). In *Ladner*, 911 So. 2d at 676 (¶14), this Court held that "a strict and literal interpretation of . . . [s]ection 91-7-145 . . . mandates that [a reasonably ascertainable creditor of the estate] be given notice by mail by the administrator before the ninety days specified in . . . section 91-7-151 . . . begins to run."[8] *See Miller v. Trs. of Jefferson Coll.*, 13 Miss. 651, 662 (Miss. 1846) (mortgage on record provides constructive notice to the administrator).

¶29.    The statutory time for filing a probate claim is not self-executing but is instead triggered to begin by the executrix's statutory notice to creditors. Our jurisprudence clearly recognizes that the time for filing a probate claim against an estate will not run against a

---

[8] We recognize that section 91-7-145(1) "does not specifically allow for notice by publication as a substitute for actual notice by mail; rather, notice by publication is a requirement in addition to providing creditors notice by mail." *Petrick*, 635 So. 2d at 1393.

13

creditor where the executrix fails to provide the statutory notice to the creditors to present their claims. *See* Miss. Code Ann. § 91-7-145(1); *Petrick*, 635 So. 2d at 1394. Hence, the time for filing a probate claim against an estate is not self-executing. *Estate of Thomas v. Thomas*, 883 So. 2d 1173, 1178 (¶15) (Miss. 2004). Burnette does not contest that, as executrix, she failed to provide the Creditor with the required statutory notice of the probate proceeding.

¶30. Here, the record reflects that Burnette did not identify the Creditor or provide notice by mail. Burnette did file a "Notice to Creditors Affidavit" stating that she had and would notify known creditors, but Burnette failed to identify any specific creditors in the affidavit. In *Thomas*, 883 So. 2d at 1178 (¶15), the supreme court addressed the tolling of the statute of limitations due to the failure of an administratrix to provide notice to a known illegitimate heir. The *Thomas* court explained that the ninety-day provision of section 91-1-15 is not self-executing and "held that the requirement to timely file within [ninety] days of first publication is not always so strictly required." *Id*. The supreme court held that "[f]ailure on the part of the administratrix to notify a child of whom the administratrix had actual knowledge can prevent the [ninety]-day statutory bar from being raised against that child" concerning the need for the child to raise paternity claims within ninety days of the first publication of notice to creditors in order to inherit from the decedent. *Id*. at 1177 (¶12).

¶31. The supreme court has also explained:

> [O]ur [state] courts are essential to the probate proceedings in that the administratrix may only validly publish notice in some newspaper, which

14

triggers the [ninety-]day limit to file a claim pursuant to [section] 91-7-145 and [section] 91-7-151, after filing an affidavit with the clerk of court stating that she has made reasonably diligent efforts to identify persons having claims against the estate and has given notice by mail as required in . . . [section] 91-7-145[(1)].

*Petrick*, 635 So. 2d at 1394.

¶32. Like the chancellor below, we find that an application of the law to the facts of this case reflects that the October 15, 2014 statement of claim filed in the probate proceeding below was not time-barred by the Creditor's failure to file the claim within the ninety-day requirement in section 91-7-151. *See Price v. Clark*, 21 So. 3d 509, 521 (¶27) (Miss. 2009) (recognizing tolling effect of a failure to give statutory notice); Miss. Code Ann. § 15-1-57 (Rev. 2012). We also find no abuse of discretion in the chancellor's finding that since Burnette failed to provide notice pursuant to section 91-7-145(1), she is estopped from arguing that the statement of claim is barred because the Creditor failed to file it within the ninety-day time limit for probated claims set forth in section 91-7-151. We now turn to review the chancellor's determination that the statute of limitations in the underlying claim had not expired.

¶33. The statute of limitations applicable to a creditor's independent right to bring a civil action based on its claim on the promissory note is not tolled by an untimely filed probate claim. However, as determined by the chancellor herein, the statute of limitations in such actions can be tolled by equitable estoppel as a result of a defendant's action that prevents

15

or delays the filing of a claim.[9] *See Ezell v. Williams*, 724 So. 2d 396, 398 (¶6) (Miss. 1998) (citing *Izard v. Mikell*, 173 Miss. 770, 775, 163 So. 498, 499 (1935)); *Douglas Parker Elec. Inc. v. Miss. Design & Dev. Corp.*, 949 So. 2d 874, 878-79 (¶¶18-19) (Miss. Ct. App. 2007).

¶34.   In his judgment, the chancellor found:

> [L]etters testamentary were issued to [Burnette] on July 28, 2010. The [ninety]-day moratorium [under section 91-7-239] expired on October 26, 2010. On that date, the four-year statute of limitation[s] established by [section] 15-1-25 began to run. On October 26, 2014, the four-year statute of limitation[s] expired.
>
> It is undisputed that neither Wilmington [Trust], nor any other party, filed suit against the Estate to enforce the promissory note prior to October 26, 2014.

¶35.   The record shows that the Creditor filed the statement of claim on October 15, 2014.[10] The chancellor acknowledged that if the Creditor is not paid on a claim based on the promissory note during the probate proceeding, the Creditor must then bring a separate civil suit against the Estate to enforce that claim on the promissory note before the four-year

---

[9] Clearly, a secured creditor with a lien on a decedent's property is not required to present a probate claim in order to enforce its lien. *See Gandy v. Citicorp*, 985 So. 2d 371, 374 (¶12) (Miss. Ct. App. 2008) (probating the claim protects the mortgagee's right to claim a deficiency). However, a secured creditor who wishes to recover from the estate's assets or enforce a probate claim for a deficiency must timely file a statement of claim in probate. *Id.*

[10] We acknowledge that the Creditor possesses the right to judicial foreclosure or nonjudicial foreclosure on the deed of trust as a separate avenue of relief from an action on the promissory note against the Estate. *See Mossler Acceptance Co. v. Moore*, 218 Miss. 757, 769-70, 67 So. 2d 868, 873-74 (1953) (even though a payee who failed to timely probate its claim on the note of the deceased was barred as an unsecured creditor, the payee was entitled to recover the salvage value of the destroyed automobile, which had been mortgaged to secure the debt.).

statute of limitations in such actions expires.[11] The chancellor also applied the law to the facts of this case in determining that the statute of limitations was tolled as to a separate civil suit against the Estate on the promissory note, and in finding that the Creditor timely filed its probate claim. As previously stated, "[t]he issue of whether the applicable statute of limitations has run is a question of law." *Stringer*, 30 So. 3d at 341 (¶9).

¶36. In addressing the tolling of the statute of limitations for civil actions against the Estate on the promissory note, the chancellor ultimately held that the foreclosure actions of 2010 and 2012 failed to constitute "lawsuits" for the purposes of section 15-1-25. However, the chancellor determined that the Fifth Circuit's stay (entered May 12, 2014) prohibiting the Creditor from foreclosing on the property began and triggered the tolling of the statute of limitations under section 15-1-25 as to the promissory note. The chancellor cited to Mississippi Code Annotated section 15-1-57 (Rev. 2012), which provides as follows:

> When any person shall be prohibited by law, or restrained or enjoined by the order, decree, or process of any court in this state from commencing or prosecuting any action or remedy, the time during which such person shall be so prohibited, enjoined[,] or restrained, shall not be computed as any part of the period of time limited by this chapter for the commencement of such action.

¶37. The chancellor acknowledged that the supreme court discussed section 15-1-57 in *Grant v. State*, 686 So. 2d 1078, 1084 (Miss. 1996). The *Grant* court explained that "[t]here can be no tolling of the statute of limitations unless the person is personally prohibited from

---

[11] *See* Miss. Code Ann. § 15-1-25.

17

bringing suit." *Id.* The *Grant* court further stated that there is "no savings or tolling of the statute of limitations unless an individual is personally prohibited or restrained from commencing or prosecuting his claim; the fact that he cannot recover because of an applicable defense or immunity does not toll the running of the statute of limitations." *Id.*; *see also Chimento v. Fuller*, 965 So. 2d 668, 676 (¶33) (Miss. 2007); *but cf. White v. McMillin*, No. 3:09CV120-DPJ-FKB, 2011 WL 3555766, at *7 (S.D. Miss. Aug. 11, 2011) (finding that since the stay imposed had no impact on the plaintiffs' ability to file any motion necessary to facilitate the filing of a timely complaint, the plaintiffs were not prohibited from bringing suit to the extent necessary to trigger section 15-1-57).

¶38. The Creditor submits that our jurisprudence has recognized in multiple contexts that the special relationship between a deed of trust and a promissory note entwines the rights and remedies each instrument creates.[12] The Creditor cites to *Kirby v. Bank of America N.A.*, No. 2:09-CV-182-DCB-JMR, 2012 WL 1067944, at *4 (S.D. Miss. Mar. 29, 2012), in which the federal district court explained that "[t]he Mississippi Supreme Court has articulated [that] . . . when the mortgage and the note are sufficiently connected[,] the assignment of the note operates [as] an assignment of the mortgage also." The *Kirby* court further stated that "[u]nder Mississippi caselaw, which is consistent with general principles of mortgage law,

---

[12] Wilmington Trust further submits that because the maturity date of the promissory note is after Norair's death, the four-year statute of limitations in section 15-1-25 that governs claims against an executrix is inapplicable. Wilmington Trust claims the note itself states the maturity date is April 1, 2036, well after Norair's death on July 19, 2010.

the mortgage follows the note." *Id*.

¶39.    Jurisprudence supports the chancellor's application of the law to the facts of this case wherein the chancellor held that the federal court stay prohibited foreclosure of the property at issue and thereby tolled the statute of limitations. In *Temples v. First National Bank of Laurel*, 239 Miss. 446, 455, 123 So. 2d 852, 855 (1960), the supreme court held that an event that tolled the running of the statute of limitations for a note secured by a mortgage also tolled the running of the statute of limitations on the mortgage itself. *See also Chimento*, 965 So. 2d at 669 (¶3) (supreme court acknowledged the trial court's order finding that the order that enjoined foreclosure tolled the statute of limitations on a promissory note).

¶40.    We find no error in the chancellor's finding that the statement of claim in this probate proceeding was timely filed, and we find no error in the chancellor's determination that "the Fifth Circuit's stay entered May 12, 2014, prohibiting [the Creditor] from foreclosing on the property pending the appeal began the tolling of [section] 15-1-25 as to the promissory note in accordance with [section] 15-1-57." *See Howard*, 63 So. 3d at 593 (¶8) (prohibiting an appellate court from disturbing a chancellor's findings under the circumstances). The chancellor also subsequently found that "the tolling period ceased at its earliest on December 9, 2014, approximately seven months later, when the Fifth Circuit reversed the U.S. District Court, or at the latest on August 4, 2015, when the U.S. District Court rendered a final judgment."

¶41.    In addressing the issue before us on review as to the timeliness of this probate claim,

this Court has held that the question is "whether [the claimant] could prove any set of evidence that would entitle him to relief against [the estate]." *Thornhill*, 905 So. 2d at 752 (¶15); *see also Thomas*, 883 So. 2d at 1178 (¶15). The broad language of section 91-7-151 requires the filing of all claims against an estate, whether due or not. To protect its recovery of its secured lien from the assets of an estate, a creditor must file a statement of claim in the probate proceeding. In addition to protecting a creditor's recovery from the assets of an estate on its claim under the promissory note, probating the claim also protects the creditor's right to claim a deficiency.[13]

¶42.    Where a claimant presents a claim against an estate in good faith and in substantial compliance with the statute, the courts have held such compliance sufficient. *See Cent. Optical Merch. Co. v. Lowe's Estate*, 249 Miss. 61, 71, 160 So. 2d 673, 677 (1964). This Court will affirm the factual findings of the chancellor "unless they are manifestly wrong, clearly erroneous, or the chancellor applied an erroneous legal standard." *Howard*, 63 So. 3d at 593 (¶8); *see also Izard*, 173 Miss. at 775, 163 So. at 499-500; *Douglas Parker Elec.*,

---

[13] *See* Miss. Code Ann. § 11-5-93 (Rev. 2014) (judicial foreclosure); Miss. Code Ann. § 89-1-55 (Rev. 2011) (nonjudicial foreclosure); Miss. Code Ann. § 89-1-59 (Rev. 2011) (reinstatement of accelerated debt). If a deficiency remains after a judicial foreclosure and sale, a creditor can then pursue a decree for the balance due. *See* Miss. Code Ann. § 11-5-111 (Rev. 2014). We note that after the sale of the real property in a judicial foreclosure, the creditor has one year to obtain a deficiency judgment for any balance or deficiency remaining after such sale. *See Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1224 (Miss. 1990). Upon issuance of a judicial decree for a deficiency judgment, then a new statute of limitations arises and runs from the date of the deficiency judgment. *See Roebke v. Love*, 186 Miss. 609, 609, 191 So. 122, 125 (1939); *Edgewater Park Co. v. Standard Bond, etc., Co.*, 162 Miss. 684, 684, 138 So. 811, 812 (1932).

949 So. 2d at 878-79 (¶¶18-19) (discussion of factual questions involved in determining equitable estoppel).[14]  Based upon the foregoing and the record, we find no error in the chancellor's application of the law to the facts of this case.  We also find that the record reflects substantial credible evidence supporting the chancellor's findings and judgment that the Creditor timely filed its claim in the probate proceeding.  We therefore affirm on that sole issue that is before this Court on appeal.

¶43.   **THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED.    ALL   COSTS   OF   THIS   APPEAL   ARE   ASSESSED   TO   THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.   WILSON, J., CONCURS IN RESULT ONLY WITHOUT   SEPARATE   WRITTEN   OPINION.     BARNES,   J.,   NOT PARTICIPATING.**

---

[14] *Cf. Allen v. Mayer*, 587 So. 2d 255, 260 (Miss. 1991) (question of fact existed as to whether failure to file pleadings barred relief; held that "[w]hether laches bars an action in a given case depends upon the circumstances of that case and is a 'question primarily addressed to the discretion of the trial court'").